FILED
United States Court of Appeals
Tenth Circuit

September 11, 2009

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

DANNY WEST,

      Petitioner-Appellant,

v.

LENORA JORDAN,

      Respondent-Appellee.

No. 09-5033

(D.C. No. CV-05-0654-E)
(N.D. Okla.)

---

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

---

Before **KELLY, BRISCOE,** and **HOLMES**, Circuit Judges.

---

Danny West, an Oklahoma state prisoner appearing pro se, seeks a certificate of

appealability ("COA") in order to challenge the district court's denial of his petition for

writ of habeas corpus under 28 U.S.C. § 2254.[1]  West also requests leave to proceed in

forma pauperis ("IFP").  For the reasons outlined below, we deny the COA and the

request to proceed IFP.

---

[*] This order is not binding precedent, except under the doctrines of law of the case,
res judicata, and collateral estoppel.

[1] Because West is proceeding pro se, we have construed his opening brief to
include a request for a COA.

I

In July 2002, Danny West entered a Toys R Us store in Tulsa, Oklahoma,

identified himself as a police detective investigating a theft, and asked to speak to the

manager on duty.  The store manager, Amy Babb, believed West to be a police officer

and escorted him to a back room, where West pointed a handgun at Babb and forced her

to unlock a store safe containing cash.  West took the cash from the safe, handcuffed

Babb to the safe, and left the store.

After an investigation, police obtained an arrest warrant for West and went to his

apartment to arrest him.  When West saw the officers approach, he fled into the apartment

and shut himself inside a bedroom closet.  The officers instructed him to surrender, and

after several minutes he emerged from the closet with a straight razor held to his throat.

West cut his own throat, and officers secured him and stopped the bleeding.

A jury in Tulsa County District Court convicted West of Robbery with a Firearm

After Former Conviction of Two or More Felonies (Count I), and Impersonating a Police

Officer (Count II).[2]  At the conclusion of a two-stage trial, the jury recommended a

sentence of seventy-five years' imprisonment for Count I and one year for Count II.  In

May 2003, the trial court sentenced West as the jury recommended, with the two

sentences to be served concurrently.

---

[2] This was actually West's second trial.  West's first trial ended in a mistrial, with
the jury deadlocked on Counts I and II.  The jury acquitted West on a third count alleging
that West had impersonated a police officer at a Ross Dress for Less store.

West raised four claims on direct appeal[3] to the Oklahoma Court of Criminal

Appeals ("OCCA"):

> (1) [] West was twice put in jeopardy in violation of the Fifth Amendment when the trial court declared a mistrial without manifest necessity as to the first proceedings, and permitted the state to try [] West a second time on the identical charges.
>
> (2) [] West's statement was obtained in violation of his Fifth Amendment privilege [under Miranda v. Arizona, 384 U.S. 436 (1966)], and the trial court erred in admitting the statement into evidence.
>
> (3) The jury was advised of the nature and length of sentences imposed for each of [] West's prior convictions, thereby prejudicing the jury's sentencing decision and permitting the jury to speculate as to parole eligibility.
>
> (4) The prosecution made an improper closing argument [and] denied [] West a fair sentencing hearing.

ROA, Principal Br. of Aplt. on Direct Appeal (Doc. # 9, ex. 1).  In July 2004, the OCCA

rejected each of West's claims and affirmed the judgment and sentence of the trial court.

West did not seek a writ of certiorari from the Supreme Court of the United States.

West filed an application for post-conviction relief in the state district court in

April 2005.  He appeared pro se and raised nine grounds of error[4]:

> (5) [The trial] court abused its discretion by allowing fingerprint examiner(s) to testify that [a] latent print found at [Toys R Us] store was a definitive "match" to [West's] fingerprint, in allowing Mr. Yerton to testify based upon unverified examination, and by instructing and allowing the jury to give "any" consideration at all to the testimony of Mr. Yerton in the

_____

[3] West was represented by a different attorney on direct appeal than he was at trial.

[4] For ease of reference, these grounds of error are numbered as they later appear in West's federal petition for habeas corpus.

February 2003 trial.

(6) [West's] arrest without probable cause or warrant and the affiant of the search warrant not being present during execution of warrant during arrest were in violation of petitioner's [Fourth and Fifth Amendments] rights, and [Okla. Stat. Tit. 22, § 1227].

(7) In violation of [Okla. Stat. Tit. 22, § 11], [the Fifth Amendment], and Okla. Const. [art. II § 21], [West] was twice put in jeopardy through duplicitous counts, [and the] judge abused discretion in not dismissing count [II].

(8) In court identifications were prejudicial and an abuse of the court's discretion, violation [Okla. Stat. Tit. 12, § 2401] and [West's] constitutional right to due process, [under the Fifth Amendment].

(9) Court abused discretion in disregarding acquittal of Count [III], evidence of other crimes, that was allowed by the court from the state in an attempt to prove [West's] guilt, when court should have dismissed all three counts based upon acquittal of Count [III], thus putting petitioner twice in jeopardy.

(10) Court abused discretion in allowing second page to be admitted in district court based upon prosecutor's knowingly perjured motion to remand for second page, as well as not giving the petitioner a presentencing investigation prior to final sentencing.

(11) Photos admitted into trial were prejudicial and in violation of [Okla. Stat. Tit. 12, § 2403].

(12) Evidence presented at trial, February 11-14, 2003, was insufficient to find [West] guilty, and therefore trial court erred in not granting [West's] pre-trial motion to dismiss, and by granting the state a retrial, thus violating [West's] rights to due process.

(13) Ineffective assistance of trial and appellate counsels.

ROA, Aplt. Br. in Supp. of Pet. of Error (Doc. # 9, ex. 4). The state district court denied

relief in June 2005. West appealed, and the OCCA affirmed the district court's denial of

4

post-conviction relief after determining that all claims except West's claim of ineffective assistance of appellate counsel were procedurally barred.

In November 2005, West filed a petition for federal habeas corpus relief, raising thirteen grounds for relief. The thirteen grounds raised before the federal district court duplicated West's previous grounds for state appellate relief; specifically, the four grounds West had previously raised on direct appeal and the nine grounds he raised in his state application for post-conviction relief. See ROA, Aplt. Br. in Supp. of Mot. (Doc. # 3) (listing the thirteen grounds for relief raised before the federal district court). In a thorough and well reasoned opinion, the federal district court denied West's petition for writ of habeas corpus under 28 U.S.C. § 2254 and denied West a COA. West v. Jordan, No. CV-05-0654, 2009 WL 523106, at *19 (N.D. Okla. Mar. 2, 2009).

II

Issuance of a COA is a jurisdictional prerequisite to an appeal from the denial of a § 2254 motion. Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). In other words, a state prisoner may appeal from the denial of federal habeas relief only if the district court or this court first issues a COA. 28 U.S.C. § 2253(c)(1)(A); see Montez v. McKinna, 208 F.3d 862, 867 (10th Cir. 2000) ("[A] state prisoner must obtain a COA to appeal the denial of a habeas petition, whether such petition was filed pursuant to § 2254 or § 2241"). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to make that showing, a prisoner must demonstrate "that reasonable jurists could debate whether (or,

5

for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). If the district court denied the "habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim," the prisoner must also, in order to obtain a COA, demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

West seeks a COA with respect to the thirteen issues he raised in his federal habeas petition. For the reasons that follow, we conclude that he has failed to satisfy the standards for issuance of a COA with respect to any of these issues.

Claims adjudicated by the OCCA

Our review of West's appeal is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Snow v. Sirmons, 474 F.3d 693, 696 (10th Cir. 2007). For claims that were addressed on the merits by the state court, we may not grant federal habeas relief on the basis of that claim unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). "When reviewing a state court's application of federal law, we are precluded from issuing the writ simply because

6

we conclude in our independent judgment that the state court applied the law erroneously or incorrectly." McLuckie v. Abbott, 337 F.3d 1193, 1197 (10th Cir. 2003). "Rather, we must be convinced that the application was also objectively unreasonable." Id. "This standard does not require our abject deference, . . . but nonetheless prohibits us from substituting our own judgment for that of the state court." Snow, 474 F.3d at 696 (internal quotation marks omitted).

1.    Double jeopardy after mistrial (ground 1)

West argues that he was subjected to double jeopardy because the trial court declared a mistrial over both parties' objections without justification and manifest necessity as to Counts I and II. West was subsequently retried and convicted on the same charges.

Under the principles of constitutional double jeopardy, a second trial will be barred unless the prosecutor can bear the heavy burden of demonstrating "manifest necessity" for any mistrial declared over the objection of the defendant. Arizona v. Washington, 434 U.S. 497, 510 (1978). However, "[t]he trial judge's decision to declare a mistrial when he considers the jury deadlocked is . . . accorded great deference by a reviewing court." Id.

In this case we agree with the district court that there was a manifest necessity for the declaration of a mistrial. After a four-day trial, the jury deliberated for three hours before passing up a note that stated they could not come to a unanimous decision in the case. The trial judge then charged the jury pursuant to Allen v. United States, 164 U.S. 492 (1986), and the jury continued its deliberations for another three hours. As the

7

district court noted, the jury passed seven notes to the judge during the course of deliberations, some of which expressed frustration over their inability to come to a consensus. Several of these notes were passed after the jury received the Allen charge. Accordingly, the OCCA's determination that the trial court did not abuse its discretion in declaring a mistrial as a result of the deadlocked jury, and that West was not subject to double jeopardy, is not contrary to, or an unreasonable application of, federal law. See Washington, 434 U.S. at 505 (explaining that while a prosecutor is generally entitled to only one opportunity to require an accused to stand trial, a retrial after a mistrial due to manifest necessity does not violate the protections of constitutional double jeopardy).

2.    Admission of statements made prior to receiving Miranda warnings (ground 2)

West argues that statements he made during his arrest and prior to being read his rights under Miranda v. Arizona, 384 U.S. 436 (1966), were improperly introduced into evidence at trial. Specifically, West said, "I'm dying, tell my family Carl Irons made me do the robberies" and "I had to get money to pay for crack." The OCCA determined that these statements were voluntarily given and that the trial judge's ruling admitting these statements into evidence was not an abuse of discretion.

Police must advise suspects of their Miranda rights prior to custodial interrogation. 384 U.S. at 467-68. Miranda does not bar the admission of voluntary statements that are not in response to police interrogation. After examining the record, we agree with the district court that West was not interrogated prior to making either of these statements,

8

and <u>Miranda</u> does not bar their admission into evidence. See <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300-02 (1980) (explaining that <u>Miranda</u> safeguards come into play only when a person in custody is subjected to express questioning or its functional equivalent). The OCCA's determination was not contrary to, or an unreasonable application of, federal law.

3.      Admission of prior judgments and sentences during the second stage of trial (ground 3)

West argues that the trial court erred by admitting evidence of his prior convictions and sentences. The OCCA determined that this evidence was properly admitted under Oklahoma law to prove prior convictions, which was a necessary element of West's armed robbery charge. Under a federal habeas petition, West may only obtain relief for an improper state evidentiary ruling "if the alleged error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." <u>Bullock v. Carver</u>, 297 F.3d 1036, 1055 (10th Cir. 2002) (quotations marks and brackets omitted); <u>see also</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67 (1991) (limiting review in a federal habeas petition to whether state court's evidentiary ruling violated due process). We agree with the district court that West has failed to show that the admission of evidence of West's actual time served on prior convictions and sentences violated his due process rights. The OCCA's determination was not contrary to, or an unreasonable application of, clearly established federal law.

4.      Prosecutorial misconduct (ground 4)

9

West argues that the prosecutor engaged in misconduct during closing arguments by making statements "designed to induce decisions based on emotional reactions of the jurors," such as, for example, "[West] has been weaving a web of deception for a long time" and "remember from the first stage what store [West] chose to rob, a Toys R Us." Dist. Ct. Op. at 15.

"[Federal h]abeas relief is available for prosecutorial misconduct only when the misconduct is so egregious that it renders the entire trial fundamentally unfair." Cummings v. Evans, 161 F.3d 610, 618 (10th Cir. 1998); Donnelly v. DeChristoforo, 416 U.S. 627, 642-48 (1974). To make this determination, we look at the statements in the context of the whole trial, the strength of the evidence against the defendant, and decide "whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution." Id. (internal citation omitted). We agree with the district court that, although the "OCCA's summary disposition of this issue was neither thorough nor entirely accurate," the alleged misconduct could not have plausibly tipped the scales in this case. Dist. Ct. Op. at 17. The evidence against West was quite strong, and included Babb's positive identification of West as the robber, a latent fingerprint found at the scene, and West's self-incriminating statements. When the trial is viewed as a whole, the prosecution's closing argument did not alter the fundamental fairness of West's trial.

5.      Ineffective assistance of appellate counsel (ground 13)

West alleges nine grounds for relief that were not raised by appellate counsel on direct appeal. Although these grounds are procedurally barred on the merits (as discussed

10

below), we consider whether these grounds support a claim that appellate counsel was ineffective for not raising them on direct appeal.

For West to merit a COA based on the alleged ineffectiveness of his appellate counsel, he must make a substantial showing that his counsel was ineffective. To ultimately establish ineffective assistance of counsel, West must show both that his counsel's performance was deficient, and that this deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668, 687 (1984). Our review of counsel's performance is "highly deferential," and "we indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." United States v. Taylor, 454 F.3d 1075, 1079 (10th Cir. 2006). In assessing an ineffective assistance of appellate counsel claim, we ask "whether appellate counsel was 'objectively unreasonable' in failing to raise these . . . claims on direct appeal and, if so, whether there is a 'reasonable probability that, but for his counsel's unreasonable failure' to raise these claims, [West] 'would have prevailed on his appeal.'" Neill v. Gibson, 278 F.3d 1044, 1057 (10th Cir. 2001) (quoting Smith v. Robbins, 528 U.S. 259, 285-86 (2000)).

As the district court found, the issues that appellate counsel failed to raise on direct appeal are without merit, and thus appellate counsel was not ineffective for failing to raise these claims. West has not overcome the strong presumption that the conduct of West's appellate counsel on direct appeal fell within the wide range of reasonable professional

11

assistance.

Specifically, West's fifth and eleventh grounds for relief allege that evidence in the form of testimony from fingerprint expert Robert Yerton and certain photographs should not have been admitted at trial. The district court correctly determined that the trial court did not abuse its discretion in admitting such evidence.

In West's sixth ground, he alleges that his arrest was in violation of the Fourth and Fifth Amendments because police lacked probable cause or a warrant. However, as the district court noted, even if this allegation is true, an illegal arrest or detention does not void a subsequent conviction. Frisbie v. Collins, 342 U.S. 519, 522 (1952). Appellate counsel did not offer ineffective assistance of counsel by failing to raise this legally frivolous claim on direct appeal.

West's seventh and ninth grounds for relief allege that West was impermissibly subject to double punishment under Okla. Stat. tit. 21, § 11(A) and constitutional double jeopardy. However, as the district court determined, robbery with a firearm and impersonating a police officer are distinct and separate crimes, and thus Oklahoma's prohibition against double punishment is not implicated in this case. Additionally, and as we discussed above, there was no constitutional double jeopardy violation which resulted from West's retrial on these charges.

In the eighth ground, West alleges that Babb's in-court identification of him violated due process. The district court correctly applied Manson v. Brathwaite, 432 U.S. 98 (1977), and concluded that each of the reliability factors weighed in favor of finding

12

that there was no substantial likelihood of misidentification by Babb.

In his tenth ground, West alleges that the government improperly amended the original information by filing a second document containing a list of West's prior convictions. We agree with the district court that the trial court did not abuse its discretion in allowing a later filing to add a list of his prior convictions to the information, especially in light of the fact that West provides no legal authority to support this argument.

In his twelfth ground, West alleges that there was insufficient evidence to support his convictions for armed robbery and impersonating a police officer. However, as the district court outlined in its opinion and we discussed above, the government's case against West was strong. Appellate counsel was not ineffective for not raising this legally frivolous claim on direct appeal.

Finally, in his thirteenth ground, West alleges that appellate counsel was ineffective for failing to raise the issue of trial counsel's ineffectiveness on direct appeal. We have already determined that the merits of each underlying claim is legally frivolous; thus, trial counsel was not ineffective for any of the grounds for relief. Appellate counsel was likewise not ineffective for failing to argue that West's trial counsel was ineffective.

Since none of the issues raised in grounds five through twelve, or in the part of ground thirteen that alleges ineffective assistance of trial counsel have merit, appellate counsel did not provide ineffective assistance of counsel by failing to raise these issues on direct appeal.

13

<u>Remaining claims</u>

We will not reach the merits of the remaining claims (grounds five through twelve and the ineffective assistance of trial counsel claim in ground thirteen).

    1.       State law claims are not cognizable

West raises five grounds for relief that are focused on violations of state law. West alleges in his sixth ground for relief that his arrest was in violation of Okla. Stat. tit. 22, § 1227. In ground seven, he asserts violations of Okla. Const. art. II, § 21 and Okla Stat. tit. 22, § 11. His eighth ground includes a claim that the trial court violated Okla. Stat. tit. 12, § 2401. In ground ten, he alleges violations of Okla. Stat. tit. 21, § 34 and Okla, Stat. tit. 22, § 982. Ground eleven references a violation of Okla Stat. tit. 12, § 2403. Some of these grounds also include claims of a federal constitutional violation.

Violations of state law, as the district court recognized, cannot form the basis for federal habeas relief. <u>See</u> <u>Estelle</u>, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). To the extent West's claims involve purely matters of state law, they cannot serve as grounds for federal habeas relief. To the extent West's claims involve federal law, they are procedurally barred, as discussed below.

    2.       Procedural bar of claims not raised on direct appeal

The remaining claims, specifically ground 5 through 12, and the portion of ground

14

13 alleging ineffective assistance of trial counsel, were not raised on direct appeal. Our review of the record confirms that these claims were not presented to the OCCA on direct appeal, but rather were raised for the first time in West's post-conviction proceedings. The OCCA stated that these claims "could have been raised during [West's] trial proceedings or in his direct appeal. All issues that could have and should have been previously raised are waived and may not be the basis of this post-conviction application." ROA, Doc. # 9, ex. 5 at 1-2 (citing Okla. Stat. tit. 22, § 1086; Fowler v. State, 896 P.2d 566, 569 (Okla. Crim. 1995)).

The OCCA's "independent state procedural bar will be adequate to preclude federal habeas review, unless [West] can establish cause and prejudice excusing his default, or that this court's refusal to consider these claims will result in a fundamental miscarriage of justice." Neill, 278 F.3d at 1057. We agree with the district court that the claims asserted in grounds 5 through 12 and the portion of claim 13 alleging ineffective assistance of trial counsel are procedurally barred. The record shows that in rejecting West's petition for habeas corpus, the district court cited the proper "cause and prejudice" standard to overcome a state procedural default and determined that West failed to show cause and prejudice for his failure to directly appeal these claims. Additionally, the district court correctly determined that the "fundamental miscarriage of justice" exception to the doctrine of procedural bar is inapplicable in this case because West failed to make a showing of actual innocence. See Beavers v. Saffle, 216 F.3d 918, 923 (10th Cir. 2000) (requiring a criminal defendant to make a colorable showing of actual innocence for the

15

fundamental miscarriage of justice exception to apply).

III

After reviewing West's application for a COA, his present briefing, and the record on appeal, we agree with the district court and conclude that no reasonable jurist could conclude that West made a substantial showing of a violation of his constitutional rights. We conclude that he has failed to establish his entitlement to a COA. Because we deny West's COA, we also deny his motion to proceed IFP.

West's request for a COA is DENIED, and this matter is DISMISSED. West's motion to proceed IFP is DENIED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge